ECONOMY FUSE & MFG. CO. v. CHASE–SHAWMUT CO.

(Circuit Court of Appeals, First Circuit.  March 26, 1918.)

No. 1303.

1. PATENTS ⬦⟞328—VALIDITY—INVENTION.
    The Gibbs improvement patent, No. 797,054; describing an improved assembling of mechanical means for more securely holding in place terminal plates connected with electric fuse wires, which serve to break circuits under abnormal conditions, *held* valid, showing invention.

2. PATENTS ⬦⟞178—RANGE OF EQUIVALENTS.
    Where all a patentee did was to invent a way in which old mechanical means could be assembled for the purpose of doing something that had previously been done through different mechanical means, the patent should be narrowly construed; that is the inventor is entitled only to a range of equivalents commensurate with the scope of his invention.

3. PATENTS ⬦⟞328—INFRINGEMENT.
    The Gibbs improvement patent, No. 797,054, for improved method of assembling mechanical means for more securely holding in place terminal plates connected with electric fuse wires, on fusible strips, *held* not infringed by defendant's device, as the patent should receive a narrow construction.

Appeal from the District Court of the United States for the District of Massachusetts; Frederic Dodge, Judge.

Suit by the Chase-Shawmut Company against the Economy Fuse & Manufacturing Company.  From a decree for complainant, defendant appeals.  Affirmed in part, and in part set aside.

George L. Wilkinson, of Chicago, Ill., and Hervey S. Knight, of Washington, D. C. (Henry M. Huxley, of Chicago, Ill., and Henry F. Hurlburt, Jr., of Boston, Mass., on the brief), for appellant.
Guy Cunningham, of Boston, Mass., for appellee.

Before BINGHAM and JOHNSON, Circuit Judges, and ALDRICH, District Judge.

ALDRICH, District Judge.  [1] The object of the Gibbs improvement patent (797,054), which describes and provides for an improved assembling of mechanical means for more securely holding in place terminal plates connected with electric fuse wires, or fusible strips, which serve to break circuits under conditions of abnormal and excessive electric currents, thereby affording protection to electrical apparatus, and protection to other property against danger of fires, was sufficiently set forth, and the means for doing it were sufficiently analyzed and elaborated by Judge Dodge, sitting in the District Court, with the result of sustaining the patent, and there seems to be no reason for disagreeing with that result, or for renewed discussion in respect to the patent, further than to look at the grounds upon which

⬦⟞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the patent was sustained, so far as they are pertinent to the inquiry whether the finding of infringement should be sustained.

The learned judge in the court below said:

"The locking plates, whether notched or not, co-operating with notches in the terminal plates to hold the latter against longitudinal movement when themselves held in place between the cap and body, and, being the 'means' referred to in claim 1, I regard as constituting the distinguishing feature of the patented structure. In adapting these locking plates to operate in the manner described, in combination with the other above elements claimed, I think invention was displayed and a patentable novelty added to the prior art sufficient to sustain the patent. * * * It is true, however, that, in view of the structures of the prior art, the claims are not entitled to a broad construction. While I do not regard them as confined strictly to the exact specific construction shown and described, I think they can be permitted to cover only combinations including elements clearly equivalent in character and mode of operation."

After saying this, the learned judge further said:

"Whether the defendant's infringing device answers this description, I regard as a question not free from difficulty."

[2, 3] It must be observed that, in stating the grounds for sustaining the patent, there is no suggestion of discovery, or of using new mechanical means, and we think there was nothing of that kind involved. All the patentee did was to suggest a way in which old mechanical means could be assembled for the purpose of doing something that had previously been done through different mechanical means. Under such circumstances, it would seem sufficiently settled that the inventor is only entitled to a range of equivalents commensurate with the scope of his invention.

While there seems to be no occasion to disagree with the District Court's interpretation of the claims, or the proposition of that court that they are not to be confined strictly to the exact specific construction shown and described, and that they may be permitted to cover only combinations including elements clearly equivalent in character and mode of operation, it would seem that, under the circumstances of the patent, the protection should be limited pretty closely to the mechanical arrangement which the inventor has set forth in his specification. This is so because the merit of his invention resides in the device which he has described, and, whether it is called strict construction or narrow construction, the interpretation is, after all, based upon the idea that the patentee is protected to the extent of his invention. Doubtless, if this were a situation in which the rule of liberal construction were admissible, the finding of infringement might well enough be sustained, but tested under the only admissible rule, that of strict construction, we think the question which the learned judge said was one not free from difficulty should have been solved the other way.

Under the rule that the inventor is entitled only "to a range of equivalents commensurate with the scope of his invention," and

where there is no suggestion of original discovery, and no suggestion of an invention of a new machine or of new mechanical means, and where an invention resides in merely describing a mechanical assembling of old means to more securely hold old instrumentalities in place, the question of what is commensurate is largely influenced by the degree of merit involved in the invention, and there must be a considerable measure of merit to justify interpretations and findings which reach out and control trade and business as to things not clearly within the terms of patents.

The idea of breaking electric circuits through the instrumentality of zinc connections, and perhaps those of other yielding metals, was old in the art, and prior to both of the devices in question there were different mechanical arrangements for holding the fuse instrumentality in place. Gibbs particularly describes another arrangement, with nothing new except the manner in which the mechanical means are to be assembled, and the alleged infringer produces another where the assembling, in some particulars at least, is different from that of Gibbs.

Under such circumstances, to constitute infringement, there must be an employment of the same principle of assembling, or of substantially the same principle, if it can be called a principle, or, in other words, an appropriation of the substantial scheme of mechanical arrangement. It seems to us that the alleged infringer has not done that. His scheme of assembling is quite different from that described in the patented uncommercial device.

As the conception with which the patentee's invention was concerned, that of a fusible connection of zinc, or other soft metal, which yields under excessive electric current, thus breaking the circuit, was old in the art, and as his conception related only to holding the fuse more securely, and as, in view of the frail character of the fusible element, it was necessary to protect it from longitudinal strains, and from twists under rotation movement, he sought to furnish such protection through suggesting the mechanical arrangement which he described. For each end of the body containing the connection the inventor proposed a terminal plate, the inner end of which, when in place, is to be connected with fusible wires or strips, and the outer end adapted for outside connection with the circuit. These connections of course, were old. The terminal plate is to have notches on its edges to receive the inner edge of his holding plate, and he suggests thin sheet metal for his holding plate, to be installed, of course, at the end of the cartridge-like body. The end plate at two inner opposite points is to have notches of a width and depth to enable it to slip over the terminal plate, and when brought into position with the notches in the terminal plate the end plate is to be turned a part of a circle, thus causing its normal edges to enter the notches of the terminal plate. The notches in the so-called terminal plate thus receive the inner edge of the holding plate with the idea of the terminal plate's being held against longitudinal strain, and with the further idea of its being held from turning or rotating. But it must be noticed that the so-called end

holding plate does not secure the terminal plate against longitudinal pull, or even rotation motion, until it is held in place by an end cap, through a slot of which the terminal plate passes, and which slips over the ends of the cylindrical body which incloses the fuse, and to which the securing appliances are being attached. This cap having a slot corresponding to the width and thickness of the terminal plate and being thus superimposed and forced into position and the end plate with it, when secured by a pin, or in some other suitable manner, with its own function, that of its slot, co-operating with that of the holding plate, secures the terminal plate against longitudinal strain, and through its function and that of the holding plate operating together secures it against rotation.

Now, what is the mechanical arrangement of the alleged infringing device?

The fuse element and the inner and outer connections of the terminal bar, which are old, are the same as those of the Gibbs, but we think the scheme of assembling the mechanical means for safeguarding them is quite different from that involved in the Gibbs.

The starting point of the defendant's holding apparatus is an opening in the middle of the terminal blade; then three metal washers are employed, together with a leather washer, the latter having a function in respect to venting. There are cuts into the first and second metal plates which create tongues, each of which, from a side opposite the other, passes through the opening in the terminal plate. There are notches in either end of the cartridge-like body at opposite points. On the first, or inner metal plate, is a rib, or flange-like projection, which engages the two notches in the end of the cartridge-like body. This engagement, together with the locking which results from passing the tongues of the two plates through the opening in the terminal plate, operates both against longitudinal and rotation movement. Then a leather washer, on which is superimposed a metal plate to hold it in place. Then an outer cap, with inside threads, so constructed that it passes over the terminal plate without performing any function in respect to it, and without performing any function in respect to locking, other than when it is closely screwed on to the threads on the outside of the cartridge-like body it holds all the appliances and devices securely in position. While these features accomplish the same result as that of the Gibbs, they do it, in a mechanical sense, under a different principle of assembling and in a different way.

In Gibbs, principally, if not altogether, the single circular ring plate, which imposes its inner edges into the side slots of the terminal bar, when held in place by the superimposed end cap, holds the terminal bar against longitudinal pull, and the slot in the end of the cap through which the terminal bar passes holds it against rotation motion; while in the defendant's device, principally if not altogether, the tongues of the two plates, which are cut from their outer edges, and imposed through the central slot of the terminal bar from opposite sides, when the plates are forced into position by the superimposed cap, hold the

terminal bar against longitudinal pull, and the rib on the inner surface of the inner plate, which imposes itself into the notches on the edges of the end of the cylindrical body, under the holding function of the cap screwed closely onto the end of the body, secures the bar against rotation movement.

It should be noticed again that the sole object of Gibbs was to economically guard an old connection against pulls and twists, and that his plate is a single metal circular ring, without tongues, which slips over a bar, while the defendant's plates are not rings slipping over a bar, but plates—three metal plates and one washer, with two tongues cut from the outer edges of the two inner metal plates.

As has been said, all the mechanical means of both the Gibbs and the defendant's devices are old, and, without discussing further the differences, we think the scheme of assembling in the two instances is quite different, and so different as to put the defendant's device outside of the Gibbs claims interpreted, as they must be, under the strict rule of construction, which clearly applies to an invention like the one in question.

That part of the decree of the District Court sustaining the Gibbs patent is affirmed; that part which relates to infringement must be set aside; and it is so decreed, with costs of appeal to the appellant.